# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WYNDEL R. HALL**

     **Petitioner,**

**v.**                                **Case No. 8:15-cv-108-CEH-AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**

_____/

## O R D E R

This cause comes before the Court on Wyndel R. Hall's petition for the writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1)  Hall challenges his state convictions for sexual battery and resisting arrest without violence.   Upon consideration of the petition (Doc. 1), the response (Doc. 41),[1] and the reply (Doc. 45), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition will be **DENIED**.

---

[1] An earlier order dismissed Hall's federal petition as time-barred. (Doc. 26) On appeal the United States Court of Appeals for the Eleventh Circuit reversed and remanded the case, finding that Hall's petition was timely filed. (Doc. 36)

## Facts[2]

On October 16, 2008, Hall was charged by amended information with two counts of capital sexual battery under Section 794.011, Florida Statutes (1990).[3]  The victim is Hall's niece by marriage.  The conduct in Counts 1 and 2 was alleged to have occurred between March 17, 1991, and March 16, 1993, when the victim was less than twelve years of age.  Before the trial the State filed a notice of its intent to introduce evidence of other bad acts alleged to have been committed by Hall.  More specifically, the State sought to introduce evidence that Hall on one or more occasions between December 13, 1984, and December 12, 1986, intentionally touched in a lewd or lascivious manner another of his nieces, Jenice Coleman.  Following a *Williams* Rule[4] hearing, the trial judge ruled that the "proposed testimony is not sufficiently similar to that of [the victim] to permit its admission at trial."  (Doc. 42-2, Ex. 1 at 47)[5]

During the trial the State sought to introduce into evidence an audio recording of a controlled telephone call between Hall and his wife, Palmira Vasquez.  The

---

[2] This factual summary derives from Hall's brief on direct appeal and the record. (Doc. 42-2, Ex. 1; Doc 42-3, Exs. 2 and 3)

[3] Count One charged Hall with capital sexual battery by penetrating the mouth of the victim with his sexual organ. (Doc. 42-2, Ex. 1 at 26) Count Two charged Hall with capital sexual battery by uniting the vagina of the victim with his sexual organ. (Id.) The amended Information also charged Hall in Count Three with resisting an officer without violence. (Id.) Hall pleaded guilty to Count Three before the trial began.

[4] Under the *Williams* Rule, evidence of a collateral crime or an act factually similar to the charged offense is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity." *Williams v. State*, 110 So. 2d 654, 662 (Fla. 1959).

[5] The page numbers cited in this Order correspond to the page numbers assigned to the exhibits on the electronic docket in CM/ECF.

original recording included a reference to another unnamed family member that Hall had allegedly molested.  This reference was redacted from both the version of the audio recording played for the jury and the transcript provided to the jury.  During her cross-examination of Hall, the prosecutor questioned Hall about the call.  Hall testified that parts of the call had been "cut out," thus apprising the jury that the recording had been altered.  After lengthy discussion and argument by the parties, the trial judge determined that the prosecutor could play the unredacted audio recording in its entirety, which contained the accusations of other uncharged bad acts that the judge had previously ruled inadmissible at the *Williams* Rule hearing.

The jury convicted Hall of the charge of capital sexual battery in Count 1 and acquitted him on Count 2.  Trial counsel subsequently filed a motion for new trial in which Hall argued that he was denied a fair trial based on the playing of the unredacted controlled phone call.  The motion was denied and Hall was sentenced to life in prison without the possibility of parole on Count 1 and to time served on Count 3.  Hall successfully moved to correct a sentencing error and was resentenced on Count 1 to life imprisonment with the possibility of parole after twenty-five years.  The state appellate court affirmed Hall's convictions and sentences and affirmed the denial of his state Rule 3.850 motion for post-conviction relief.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this

> Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and

5

'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court on direct appeal affirmed Hall's convictions and sentences.  (Doc. 42-3, Ex. 6)  In another *per curiam* decision the state appellate court affirmed the denial of Hall's Rule 3.850 motion. (Doc. 42-4, Ex. 16)  The state appellate court's affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 563 U.S. at 181–82.  Hall bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## Standard for Ineffective Assistance of Counsel

Hall claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.
Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Hall must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Hall must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

8

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Hall cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under 28 U.S.C. § 2254(d) Hall must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

**Ground One**

Hall contends that his trial counsel rendered ineffective assistance by not moving to suppress the controlled telephone call between he and his wife. Hall alleges that counsel (1) "failed to discover that Detective Troy Mann did not state the time, date, or place the call was to have been made," (2) "failed to discover that at the beginning of the call the Petitioner's wife[,] Palmira Vasquez[,] states that the person she describes as the Petitioner had hung up and that he was going to call back," and (3) "failed to discover that there were no phone records presented in the discovery to clarify that a call was made from the Petitioner's phone to Ms. Vasquez on the day in question." (Doc. 1 at 4–5) Hall argues that his counsel "was deficient in his performance for not being aware of the fact that authentication or identification of

evidence is required as a condition precedent to its admissibility." (*Id.* at 5)  Hall alleges that he was prejudiced by counsel's alleged error because "the call pertained to sexual allegations made by the alleged victim . . . and counsel should have known that the phone call would hinder his rights to a fair trial." (*Id.*)

The state post-conviction court denied this ground of ineffective assistance of counsel as follows (Doc. 42-4, Exhibit 15 at 58) (court's record citations omitted):

> In claim 1, Defendant argues that trial counsel should have filed a Motion to Suppress or a Motion in Limine to keep the controlled phone call out of evidence. Defendant argues that the time, date and place of the call were not made known on the recording and that there is no proof Defendant was the person who called back when the initial call made by the victim's aunt was dropped. The Court finds that there was testimony as to the date, time and place of the call. Det. Troy Mann testified that the phone call was made from Ms. Vazquez's home and it was made on July 8, 2008. Ms. Vazquez testified that the phone call was made on July 8, 2008. When Defendant called Ms. Vazquez after the initial call was dropped, he identified himself as Wyndel. Additionally, Defendant took the stand and acknowledged that he was on the other end of the controlled phone call. The Court finds that had a Motion to Suppress or Motion in Limine been filed, it would have been denied. Defendant cannot establish deficient performance or prejudice.

As in his Rule 3.850 motion, Hall presents no valid basis for suppression of the controlled call.  He presents no evidence to support his contention that counsel was unaware of either the content of the call or the requirements for admissibility of the evidence.  Moreover, the state court has answered the question of how the court would have resolved a motion to suppress the recording on the basis Hall suggests—the motion would have been denied. *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir.

2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). This court must abide by the state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." (citations omitted)); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Because counsel had no basis to move to suppress the recording as Hall suggests, he fails to establish that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

Hall contends that his trial counsel rendered ineffective assistance by not "review[ing] the redacted portions of the CD recording prior to trial and fail[ing] to move for a mistrial once it had been played." (Doc. 1 at 7) Hall alleges that his counsel advised him before the trial that the prosecutor had redacted from the audio recording of the controlled call an excerpt in which Hall's wife, Palmira Vasquez, stated that the victim told her that she (the victim) was "not the only family member [Hall] molested." (Id. at 8) Hall asserts that this excerpt remained on the recording that was played for the jury at the trial. He argues that he suffered prejudice as a result of counsel's alleged error because, when questioned on cross-examination about this portion of the

recording, he testified that parts of the recording had been "cut out," resulting in the trial judge allowing the jury to hear the unredacted recording in its entirety.

The state post-conviction court denied this ground of ineffective assistance of counsel as follows (Doc. 42-4, Exhibit 15 at 58) (court's record citation omitted):

> In [this] claim . . . Defendant argues that trial counsel failed to review the redacted cd of the controlled phone call and allowed it to be played in its original form. The record refutes the Defendant's claim. The cd was edited to remove the portion of the conversation where Ms. Vazquez indicates that there are other relatives that have accused the Defendant of sexual assault. The redacted cd did not reference any other bad acts or crimes. When the Defendant mentioned that the cd had been edited, the State was allowed to play the cd in its entirety. Defense counsel did object at the time and did move for a new trial after Defendant's conviction. Defendant has not established deficient performance.

The unedited transcript of the controlled call includes the following excerpt (Doc. 42-2, Ex. 1 at 109) (emphasis added):

> VASQUEZ: Um, just mentally. You know, just, you know, and her talking to me and basically what she said **is that she was not the only family member that you molested**.
>
> HALL: That (inaudible). There ain't been nobody else.
>
> VASQUEZ: (inaudible) I know you said, you said that before, but, she said that you are not and . . .
>
> HALL: That's the only person, Palmira.

During the direct examination of Vasquez the prosecutor played for the jury a redacted version of the controlled call that did not include the portion of Vasquez's statement about the other family member (Doc. 42-3, Ex. 2 at 104, 109):

> (The recording was played to the jury and transcribed by the court reporter to the best of her ability as follows:)
>
> . . . .
>
> MS. VASQUEZ: Just mentally. You know, just, you know, in her talking to me, and basically what she said.
>
> MR. HALL: That's it. There ain't nobody else.
>
> MS. VASQUEZ: I know, you said—you said that before. But she said that you are not and—
>
> MR. HALL: That's the only person, Palmira.

In the subsequent cross-examination of Hall, the prosecutor inquired about the redacted excerpt of the call and Hall testified that parts of the call were "cut out" (Doc. 42-3, Exhibit 2 at 172–73):

> [PROSECUTOR]: Okay. Then at the end of the conversation, Ms. Vasquez said, "You know, just, you know, and her talking to me and basically what she said is she—and then you said, "there ain't been nobody else."
>
> [HALL]: Okay.
>
> [PROSECUTOR]: And then she said, "I know, you said that before." And then you said, "That's the only person, Palmira."
>
> [HALL]: Okay. There's parts cut out of that, ma'am. And that's the reason for that response.
>
> [PROSECUTOR]: What part was cut out?
>
> [HALL]: I don't know.

Based on Hall's response, the prosecutor requested a sidebar and the jury was removed from the courtroom. The trial judge inquired of the prosecutor and defense

counsel about Hall's testimony about the redacted recording (Doc. 42-3, Ex. 2 at 173–

86):

> THE COURT: Remember the Williams Rule hearing? Anybody remember that? Yes?
>
> [PROSECUTOR]: Yes, Your Honor.
>
> THE COURT: Tell me if I'm crazy or not. Nothing was ever said at that hearing that there was a controlled phone call. Am I right or wrong? We certainly did not play the phone call, did we?
>
> [PROSECUTOR]: (Nods head).
>
> THE COURT: What I had, as I remember, and I don't want to remember things wrong. What I had to go by when I made that ruling was the second girl's testimony. I'm sorry, I don't recall her name.
>
> [PROSECUTOR]: Janice Coleman.
>
> THE COURT: Coleman. And I had, you know, I said, okay, now I know what Ms. Coleman is going to say. In order to decide if this is admissible, I also kind of need to know what the victim is going to say. Right? Yes?
>
> [PROSECUTOR]: Yes, Your Honor.
>
> THE COURT: And we kind of talked about that. And you said, well, Judge, you can read the complaint affidavit. That's more or less what she's going to testify to. And I think [defense counsel] pointed out some things that might have been somewhat inconsistent between that and the deposition. But by and large, that's what I was given to go by; is it not? [Defense counsel], do you disagree?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: That's what I had to work with, right? Okay. I first—if I knew about the controlled call before, I had

forgotten it. Maybe I did. I have dealt with this case since before [defense counsel].

There's nothing in the complaint affidavit, unless I'm wrong, that refers to behaviors other than what he is supposed to have done with [the victim]. Is there any reference anywhere at all in that complaint affidavit to the defendant having done anything to Ms. Coleman or anybody other than [the victim]?

I can make it easy for you. There's nothing in there about it. So therefore, when I get here today, the state introduces—

[PROSECUTOR]: Your Honor, I would point out in the complaint affidavit that Vasquez then asked him if there were other family members that he molested.

THE COURT: And he said no.

[PROSECUTOR]: Mr. Hall told her that [the victim] was the only one.

THE COURT: Okay. When I get here today, the state introduces the CD of this phone call. [Defense counsel] asked for a side bar because of something that he picked up on and it led him to think maybe we were playing the original recording. We made it clear, no, this is the edited recording that the state attorney and defense attorney agreed to. Right? Is that what happened today? It should be on the record. That's exactly what happened, isn't it?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Would you agree that that is the first time that the Court ever knew there was an edited recording of the phone call?

[PROSECUTOR]: Yes, Your Honor.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Do we have a transcript of the unedited version of the phone call?

[PROSECUTOR]: We do, Your Honor.

. . . .

THE COURT: Okay. For the record, and this is Ms. Vasquez speaking, she said, "Um, just mentally. You know, just, you know, and her talking to me and basically what she said is, she was not the only family member that you molested." And the defendant said, "That's it, there ain't been nobody else." So sort of the second half of one sentence is what has been redacted?

[PROSECUTOR]: Correct.

[THE COURT]: Do you agree with that, [defense counsel]?

[DEFENSE COUNSEL]: Yes. Yes, sir.

THE COURT: Now that the record is clear, what is it that you expect me to do now?

[PROSECUTOR]: Your Honor, since the defendant said that it was edited or there was parts missing, I would ask that we be able to play the CD in its original form.

THE COURT: What do you say to that, [defense counsel]?

[DEFENSE COUNSEL]: I don't see any reason to do that.

. . . .

THE COURT: You know, this trial, this case is just the gift that keeps on giving, isn't it? You're going to hate me. I want you to find the two questions before I sent the jury out and read them to me.

(The court reporter reads back last two questions.)

THE COURT: The word blow job in that recording, the state's take on it is that the woman said, she said you made

her give you a blow job and that the defendant said, yes, I did. And the defense's take on it is, well, she mentioned the blow job and that's not what I was admitting to. This whole dadburn case comes down to the interpretation given that line of the transcript.

And then the next question, I'm sorry, read it to me again, the question that followed the blow job question.

(The court reporter reads back question at this time.)

THE COURT: That's when he said it had been redacted. Now both of you are intelligent enough to know where the land mine is in this transcript. Mr. Hall, you're intelligent enough to know that. [Prosecutor], you're intelligent enough to know that. Why either one of you would risk stepping on it is absolutely beyond me. What is—why would you have even asked that question?

[PROSECUTOR]: Because I think that's a direct admission when he says, there ain't been nobody else.

THE COURT: Doesn't that kind of imply that he had been accused of doing something to somebody else? Or is that just something we know because we know he has?

[PROSECUTOR]: I think—I mean, again, it is an admission.

THE COURT: Here is the thing. This is something I really want to ask everybody. You know, I don't try to tell people how to try their cases. And just because I've tried a lot of cases doesn't mean I did any better job than anybody else. I lost my share and I did my share of dumb things in the courtroom.

The transcript speaks for itself. We know what he said. So trying to put spin on what he said is for closing argument. I just don't know what you think you're accomplishing. I mean, most of the time I direct these remarks at the prosecutors.

When you have the defendant on the witness stand, it seems to me half of the people in the State Attorney's Office think they can somehow get the defendant to say, [prosecutor], you got me there. You're right. You're too fast for me, I did it, I'm guilty. They're not going to change their story. But you're right there two inches from a mine field and you decide you want to walk through it.

Mr. Hall—

THE DEFENDANT: Yes, sir.

THE COURT: — just man to man from me to you, you know good and well why that tape is excised is because you know good and well that your lawyer has fought tooth and nail to keep this jury from hearing about the other stuff you have been accused of doing. You knew that, but yet you chose to make a remark about the thing being edited. So therefore, now we've got this jury thinking, well, the cops messed with that tape. So I don't know what to do. If I could just fine people for being stupid, this would be easy.

[Defense counsel], I'm very concerned about what this jury is going to think of what Mr. Hall said, as ill-advised as the question itself might have been. I'm very concerned about it. It seems to me like they are going to come away thinking this thing was doctored, and doctored in such a way as to make it look worse for him than it actually is. You know, this is a classic case of somebody's client getting on the stand and letting his mouth override his brain. Have you got a response . . . ?

[DEFENSE COUNSEL]: Judge, I don't have a response, I have a comment. My concern is the same as your own. I don't know how a jury hears—moves forward knowing we have a statement out there.

Originally, my fault on this matter was [the prosecutor] came to me earlier and said she was going to redact this, showed me the redaction. I made a mistake, I did not ask her to also redact the following two lines that followed that question. "That's it, there ain't been nobody else" and "that's the only person, Palmira." And I have been thinking

about it all day, but it is a mistake and I own that mistake and I have allowed this to get to this situation because of my choice.

THE COURT: Okay. We ain't having no throwing yourself on a sword here . . . .

[DEFENSE COUNSEL]: I'm not throwing myself on a sword. My point is, if you're asking for a cure, I don't know what the cure is.

THE COURT: I do. I'll tell you what, I have gotten round-about answers to half of the questions I have asked here in this trial. I'm going to grant the state's motion. We're going to play the whole thing. Mr. Hall, you did this to yourself.

THE DEFENDANT: She asked me the question, Your Honor.

THE COURT: Mr. Hall—

THE DEFENDANT: She shouldn't have asked me the question. How can I answer half a question?

THE COURT: — if you argue with me, because, sir, let me tell you what, that would be even stupider than what you have already done to argue with me. We're playing the tape. We're playing the whole thing. You're lucky I don't let the Williams Rule witness come in here and fill in the gaps, too, because, brother, I'm going to tell you something, she got excluded for one reason only and that is because it doesn't qualify as Williams Rule evidence. It don't mean that I don't think it might have happened. It means that the state didn't have the legal authority to use it. And here we play games and we step on a land mine and it blows up.

THE DEFENDANT: I wasn't trying to—

THE COURT: Don't you talk to me again. Don't say another word to me for the rest of this day. Bring the jury in.

THE BAILIFF: Yes, sir.

[DEFENSE COUNSEL]: Judge, for economy sake, I have
no objection obviously to just playing the tape, however you
want to do it and proceed is fine with me.

The unredacted audio recording of the controlled call was then played for the
jury. (Doc. 42-3, Ex. 2 at 187–92)

Contrary to Hall's contention, the challenged statement about the molestation
of other family members was not played for the jury during Vasquez's testimony and
the redacted version did not reference other bad acts or other alleged victims.  Only
after Hall testified about the recording being edited did the trial judge allow the
unredacted version to be played for the jury.  When the trial judge inquired of trial
counsel about whether to grant the State's request to play the unredacted version,
counsel stated, "I don't see any reason to do that." (Doc. 42-3, Ex. 2 at 180)  Although
not phrased as a formal objection, counsel did not initially agree to the State playing
the unredacted version.[6]  Once the trial judge made clear that the unredacted version
would be played for the jury, counsel did not object to the court's procedure for playing
the recording.  Given the trial judge's discussion on the admission of the unredacted
recording as a result of Hall's trial testimony, Hall fails to show that a more formal or

---

[6] After the trial, counsel unsuccessfully moved for a new trial based on the admission
of the unredacted recording. (Doc. 42-2, Ex. 1 at 54–57)  Hall subsequently argued in his
direct appeal that he "was denied a fair trial when Judge Raiden granted the prosecutor's
request to play the unredacted tape which informed the jury there had been other accusations
of sexual misconduct against Mr. Hall." (Doc. 42-3, Ex. 3 at 299)  The State argued in its
appellate brief that Hall failed to preserve this issue for appeal based on a lack of objection at
trial and "therefore, a fundamental error standard of review applies." (Doc. 42-3, Ex. 4 at 325)
The state appellate court *per curiam* affirmed Hall's convictions. (Doc. 42-3, Ex. 6)

further objection would have resulted in the exclusion of the unredacted recording. Hall fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254 (d)(1), (d)(2).

**Ground Three**

Hall contends that his trial counsel rendered ineffective assistance by not calling his son, Wyndel Hall, Jr., to testify in his defense. Hall claims that his son "would have testified that he's never observed any sexual misconduct between the petitioner and [the victim], that [the victim] never told him of any sexual misconduct on the part of the petitioner, that he'd shared the same bedroom with [the victim], and that she had reason to lie because she was unhappy that the petitioner had remarried her aunt and was financially secure, and was not helping her financial situation." (Doc. 1 at 10) Hall alleges that his son's testimony would have refuted the victim's allegations "that as she got older she told several people about the incidents, along with [Hall's son]." (Id.)

The state post-conviction court denied this ground of ineffective assistance of counsel as follows (Doc. 42-4, Exhibit 15 at 58) (court's record citations omitted):

> . . . . Defendant argues that trial counsel failed to call Wyndel Hall Jr. as a witness. Mr. Hall would have testified that the Defendant did not sneak into the room he shared with the victim and that the victim did not confide in him. The Court finds that such testimony would not likely change the outcome of the trial. The victim testified that the event occurred in the bathroom or in Defendant's own room. Nobody was around when the incidents occurred. Furthermore, the victim cannot remember when she told

> Mr. Hall Jr. that the Defendant has sexually battered her.
> This would have occurred years after the abuse.

Hall's unsupported contention that counsel should have called his son to testify, without more, is insufficient to warrant relief. *See, e.g., Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009). Hall fails to show that the outcome of his trial would have been different if trial counsel had called his son to testify. Because he shows no prejudice, Hall's claim of ineffective assistance of counsel warrants no federal habeas relief because *Strickland's* requirements remain unsatisfied. Hall fails to establish that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Hall contends that his trial counsel rendered ineffective assistance by not objecting to the allegedly improper cross-examination of Hall about the redacted recording of the controlled call.  Hall alleges that his trial counsel was aware that the trial judge "had made a prior ruling before trial that the prosecution may not refer to any testimony given by the alleged victim's cousin . . . about allegations of sexual misconduct by the petitioner."   (Doc. 1 at 13)   Hall asserts that during cross-examination the prosecutor tried to elicit from him testimony about alleged misconduct with the victim's cousin and that his counsel's "spontaneous response caused the court to make the unfair and improper decision to play the CD in its entirety." (*Id*.)

The state post-conviction court denied this ground of ineffective assistance of counsel as follows (Doc. 42-4, Exhibit 15 at 58–59) (court's record citation omitted):

> Defendant argues that trial counsel failed to object to the State Attorney's improper cross examination of the Defendant. The Court does not find that the State Attorney engaged in improper cross examination. The State Attorney was referencing parts of the controlled phone call that had already been played for the jury. The Defendant then chose to testify that the cd had been edited.

Hall fails to establish that the portion of the cross-examination that he challenges was improper.  Because he satisfies neither requirement of *Strickland*, Hall cannot show entitlement to relief.  The state courts' rejection of this ground is neither contrary to, or an unreasonable application of, *Strickland* nor was the ruling based on

an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**

Hall contends that his attorney rendered ineffective assistance by not retaining either Robert Berland or Valerie McLain as an expert witness and by not moving to have the victim examined "to show that she had never suffered the symptoms and diagnostic criteria typically associated with C[hild] S[exual] A[buse] A[ccommodation] S[yndrome]."  (Doc. 1 at 15)  Hall alleges that "had counsel retained the services of one or both of these mental health experts and moved to have [the victim] examined, it is probable that exculpatory evidence would have surfaced that [the victim] was not showing signs of CSAAS and in their expert opinions, it was unlikely that she was sexually abused as a child."  (Id.)  The state post-conviction court denied this ground of ineffective assistance of counsel, concluding "that such evidence, if obtained, would not change the outcome of trial."  (Doc. 42-4, Exhibit 15 at 59)

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."  *Chandler*, 218 F.3d at 1314.  *See also, Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it."); *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) ("[W]hich witnesses, if any, to call, and

25

when to call them, is the epitome of a strategic decision."). Hall's unsupported contention that counsel should have called either Robert Berland or Valerie McLain as an expert witness, without more, is insufficient to warrant relief. *See Bray*, 265 F. App'x at 298; *Ashimi*, 932 F.2d at 650.

Hall has not established that either Berland or McClain would have testified that the victim did not meet the diagnostic criteria for CSAAS or that either expert would have opined that the victim was not sexually abused as a child. "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with [a petitioner's] claims is mere speculation and does not entitle him to habeas relief." *Finch v. Sec'y, Dept of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016). Hall fails to show that the outcome of his trial would have been different if trial counsel had called either witness to testify. *See Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001) (holding that the petitioner did not establish ineffective assistance of counsel based on defense counsel's failure to call an expert witness because the petitioner failed to show that counsel's decision was so patently unreasonable that no competent attorney would have chosen that strategy), *cert. denied*, 535 U.S. 1000 (2002). Because he shows no prejudice, Hall's claim of ineffective assistance of counsel warrants no federal habeas relief because *Strickland's* requirements remain unsatisfied. Hall fails to establish that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Six**

Hall contends that his trial counsel rendered ineffective assistance by not objecting to the prosecutor giving the jury an un-edited copy of the transcript of the controlled phone call and by not reviewing the transcript before it was given to the jury.  Hall alleges that such errors resulted in prejudice "because the un-edited transcript referred to allegations of other bad acts or wrongs made by the alleged victim's cousin . . . ."  (Doc. 1 at 18)  The state post-conviction court concluded that the trial transcript refutes this ground and denied relief.[7]  (Doc. 42-4, Exhibit 15 at 59)  Hall argues in his reply that the state court relied on the wrong page of the trial transcript to refute his claim and that the record shows that the State gave to the jury an unedited copy of the transcript.  (Doc. 45 at 6)

The record shows that the State introduced into evidence a transcript of the controlled call.  (Doc. 42-3, Ex. 2 at 103–04)  Hall presents no evidence establishing that the transcript was an unredacted copy as he contends.  Moreover, in his motion for a new trial Hall acknowledged that the State used a redacted transcript.  (Doc. 42-4, Ex. 15 at 86)  The state courts' rejection of this ground of ineffective assistance of counsel was neither contrary to, or an unreasonable application of, *Strickland* nor was

---

[7] The state post-conviction court relied on an excerpt of page 379 of the trial transcript in which the trial judge determined that the jury would hear the complete recording of the telephone call but without an unredacted transcript (Doc. 42-3, Ex. 2 at 187):

> THE COURT: Members of the jury, we're going to play the complete recording of the phone call. This is the complete recording of the phone call. You don't have a transcript to follow. State, play it.

the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d)(1), (d)(2).

**Grounds Seven and Eight**

In Ground Seven Hall contends that his trial counsel rendered ineffective assistance by not objecting to the State's use of "bad acts" evidence, including the controlled call, and not objecting to such evidence becoming a feature of the trial.  Hall generally refers to "[t]he statements of [the victim] and Palmira Vasquez which w[ere] not admitted into evidence" and to "uncharged crime evidence" as the basis for this ground.  (Doc. 1 at 28–29)  Hall offers no greater specificity in his reply.  (Doc. 45 at 7–8)

In Ground Eight Hall contends that his trial counsel rendered ineffective assistance by not moving for a mistrial "when the court committed reversible error by providing the jury during deliberations the un-redacted CD of the controlled phone call after the court had properly excluded portions of the conversation in limine which mentions the defendant had committed similar acts but at other times not charged in the information."  (Doc. 1 at 22)

The allegations Hall presents in Grounds Seven and Eight of the federal petition are a combination of the allegations raised in claims seven and eight of his Rule 3.850 motion.  (Doc. 42-4, Ex. 14 at 26–31)  The state post-conviction court denied these grounds of ineffective assistance of counsel as follows (Doc. 42-4, Exhibit 15 at 59):

> In claim 7, Defendant argues that trial counsel failed to object to the introduction of other bad acts/crimes. Defendant fails to point out which bad acts were

28

introduced. Upon reading of the transcript, the case focused on the crimes charged. The Court does not see any reference to other bad acts/crimes until the original cd was played after the Defendant mentioned that it had been edited. At that point the jury learned that another relative had accused the Defendant of similar crimes.

In claim 8, Defendant argues that trial counsel should have moved for a mistrial when the introduction of other bad acts, William's Rule evidence and the controlled phone call became the main feature at trial. Again, the Court would point out that other bad acts did not come into evidence until the Defendant referenced the edited cd. No William's Rule evidence was presented and the controlled phone call was an admissible piece of evidence. The Court does not find deficient performance or prejudice.

As the state court noted, once Hall testified about the edited controlled call, the trial judge allowed the unredacted audio recording to be played for the jury.[8] Accordingly, the references to other bad acts included on the recording were properly before the jury.  Hall presents no viable challenge to the admissibility of either the unredacted recording or other bad acts.  Moreover, in Florida, "[a] motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial." *England v. State*, 940 So. 2d 389, 401–02 (Fla. 2006).  *See also Fletcher v. State*, 168 So. 3d 186, 207 (Fla. 2015) ("[T]he standard for a motion for mistrial is high[.]").  Hall fails to show that a motion for mistrial would have been granted on the basis he suggests in light of his testimony about the edited call.  The state post-conviction court

---

[8] As noted earlier, when the prosecutor asked the trial judge to allow the entire controlled call to be played for the jury once Hall testified that parts of the call had been "cut out," trial counsel did not agree that the unredacted call should be played, stating that he "did not see any reason to do that." (Doc. 42-3, Ex. 2 at 180)

neither unreasonably applied controlling Supreme Court precedent nor unreasonably determined the facts by rejecting these grounds of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Nine**

Hall alleges that "Florida Statute[] § 794.011 (2) has been unconstitutional since 1981 and the Florida Legislature refuses to amend the statute, therefore, the offense of capital sexual battery does not constitutionally exist."  (Doc. 1 at 21)  He asserts that the state court committed reversible error by overlooking this ground, resulting in a violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.

Hall presented this challenge to the constitutionality of the statute to the state court in his original Rule 3.850 motion and his amended Rule 3.850 motion filed in January 2014.[9]  (Doc. 45-3, Ex. 11 at 402–06; Ex. 12 at 455)  The state post-conviction court dismissed the amended Rule 3.850 motion without prejudice based on Hall's failure to include a certification and allowed Hall the opportunity to file a facially sufficient motion.  (Doc. 42-3, Ex. 13)  When Hall filed his subsequent Rule 3.850 motion in February 2014 he did not include a challenge to the constitutionality of the state statute as a ground for relief in the body of the motion.  (Doc. 42-4, Ex. 14)  The Respondent asserts that, because Hall attached "claim 9" as an exhibit to his properly filed Rule 3.850 motion rather than presenting it in the motion as a claim for relief,

---

[9] Hall raised this claim as ground nine of his original Rule 3.850 motion. (Doc. 42-3, Ex. 11 at 402–06) Although he did not specifically designate ground nine in his amended Rule 3.850 motion, Hall includes ground nine in his "memorandum of law" in his amended Rule 3.850 motion. (Doc. 42-3, Ex. 12 at 455)

Hall "abandoned and waived" the claim, rendering it unexhausted and procedurally barred from federal review.  (Doc. 41 at 24–25)  Hall argues that the state court did not address this ground in its order denying his Rule 3.850 motion but does not dispute the Respondent's assertion of either abandonment or procedural default.

To the extent that Hall did not present this ground to the state court as an independent basis for relief in the body of his amended Rule 3.850 motion, the ground is arguably procedurally defaulted as the State asserts.  However, the State cites no authority specifically holding that including a ground for relief as an attachment to an otherwise properly filed amended Rule 3.850 motion for post-conviction relief results in waiver or abandonment of the ground.  Notwithstanding a procedural bar, Hall is not entitled to relief because, even if considered on *de novo* review, the ground fails on the merits.

Hall argued in his original Rule 3.850 motion that "[s]ince the death penalty has been forbidden for Fla. Stat. 794.011(2) and that sexual battery is no longer a capital felony by definition, the Defendant's conviction for capital sexual battery violates the Eighth and Fourteenth Amendments to the United States Constitution and the continuation of the conviction constitutes a manifest injustice."  (Doc. 42-3, Ex. 11 at 403)  Citing *Buford v. State*, 403 So. 2d 943 (Fla. 1981),[10] Hall argued that "[s]ince the Florida Supreme Court declared the death penalty to be unconstitutional for capital sexual battery in *Buford* . . ., Fla. Stat. 794.011(2) became non-existent and does not

---

[10] *Buford* holds that a sentence of death for the crime of sexual assault violates the Eighth Amendment's prohibition against cruel and unusual punishment. 403 So. 2d at 951.

meet constitutional muster due to the provisions for the death penalty remaining in the statute and must be re-enacted by the legislature by removing the death penalty provisions." (*Id.*)

An amended information charged Hall with capital sexual battery pursuant to section 794.011, Florida Statutes.  (Doc. 42-2, Ex. 1 at 26)  However, despite its title, "capital sexual battery" is not a capital offense because it is not subject to the death penalty.  *See Buford*, 403 So. 2d 943 (holding that a death sentence cannot be imposed for sexual battery of child).  *See also Huffman v. State*, 813 So. 2d 10, 12 (Fla. 2000) (explaining "even if a felony is classified in the Florida Statutes as a capital offense, it is not 'capital' under case law unless its subject to the death penalty"); *State v. Hogan*, 451 So. 2d 844, 845–46 (Fla. 1984) ("Sexual battery of a child, . . . while still defined as a 'capital' crime by the legislature, is not capital in the sense that a defendant might be put to death.").  The Supreme Court of the United States has rejected the argument that the failure to amend the state statute which classifies sexual battery upon a person less than twelve years of age as a capital offense can be interpreted as permitting the application of the death penalty.  In *Kennedy v. Louisiana*, 554 U.S. 407, 424–25 (2008), the Court explained:

> In 1981, however, the Supreme Court of Florida held the death penalty for child sexual assault to be unconstitutional. *See Buford, supra*. It acknowledged that *Coker* addressed only the constitutionality of the death penalty for rape of an adult woman, 403 So.2d, at 950, but held that "[t]he reasoning of the justices in *Coker* . . . compels [the conclusion] that a sentence of death is grossly disproportionate and excessive punishment for the crime of sexual assault and is therefore forbidden by the Eighth Amendment as cruel and unusual

punishment," id., at 951. Respondent points out that the
state statute has not since been amended. Pursuant to Fla.
Stat. § 775.082(2) (2007), however, Florida state courts
have understood *Buford* to bind their sentencing discretion
in child rape cases. *See, e.g., Gibson v. State*, 721 So. 2d 363,
367, and n. 2 (Fla. App. 1998) (deeming it irrelevant that
"the Florida Legislature never changed the wording of the
sexual battery statute"); *Cooper v. State*, 453 So. 2d 67 (Fla.
App. 1984) ("After *Buford*, death was no longer a possible
penalty in Florida for sexual battery"); *see also* Fla. Stat.
§ 775.082(2) ("In the event the death penalty in a capital
felony is held to be unconstitutional by the Florida Supreme
Court . . . the court having jurisdiction over a person
previously sentenced to death for a capital felony . . . shall
sentence such person to life imprisonment[.]").

Hall fails to establish either that section 794.011(2)(a), Florida Statutes,
proscribing capital sexual battery is unconstitutional or that his conviction under the
statute violates either his right to due process or the prohibition against cruel and
unusual punishment.   Accordingly, even if reviewed on the merits, Ground Nine
warrants no relief.

Accordingly, Hall's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.
The Clerk is directed to enter a judgment against Hall and **CLOSE** this case.

## DENIAL OF BOTH A
## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

**IT IS FURTHER ORDERED** that Hall is not entitled to a certificate of
appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement
to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a
district court must first issue a certificate of appealability ("COA").  Section 2253(c)(2)

limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Hall must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Hall is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Hall must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida this 19th day of September, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties if any